IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| GAILE K. OWENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:00-2765-Br |
| | ) | |
| EARLINE GUIDA, WARDEN, | ) | |
| | ) | |
| Tennessee Prison For Women, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

This matter is before the Court pursuant to Petitioner Gaile Owens' Rule 59, Fed. R. Civ. P., motion to alter or amend this Court's prior judgment denying her habeas relief on various claims that her constitutional rights were violated in the conviction and sentence of death for her role in the murder of her husband, Ronald Owens. Petitioner asserts two grounds in support of her motion: 1) that the Court erred in granting summary judgment for the Respondent, Warden Earline Guida, on Petitioner's claim that her due process rights, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), were violated by the prosecution's failure to disclose certain cards and notes in its possession evidencing an affair between the victim and his mistress, Gala Scott; and 2) that the Court erred in its prior finding that Petitioner had procedurally

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on **8-31-05**



defaulted on the claim that her death sentence was unconstitutional because her agreement to plead guilty in exchange for a life sentence was thwarted by her co-defendant.

A motion pursuant to Rule 59 is not an opportunity to re-litigate a case. Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). Rather, a motion to alter or amend judgment should be granted only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent a manifest injustice. GenCorp, Inc. v. American Intern. Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)(citations omitted). Proceeding under these standards, the Court will evaluate each of Petitioner's arguments in turn.

**I.   THE COURT ERRED IN DENYING RELIEF ON PETITIONER'S BRADY CLAIM**

Owens claims that the Court erred in denying her habeas relief on her due process claim that the prosecution failed to disclose evidence consisting of letters belonging to the victim that were apparently written by his mistress. In granting summary judgment in favor of the Respondent, the Court ruled that it need not determine whether the suppressed materials were truly exculpatory because Petitioner had failed to show prejudice resulting from the suppression. See Order Granting In Part Respondent's First Motion For Partial Summary Judgment, dkt. no. 78 at 57-58 (June 23, 2005)("Owens Order II"). The Court held that, because Petitioner and her counsel knew of the victim's extramarital affairs prior to

trial, she could have introduced, through the testimony of Gala Scott, evidence of the affair if Owens believed such evidence was truly exculpatory. Accordingly, the Court held that Petitioner had not demonstrated a reasonable probability that her sentence would have been different had the cards and notes been produced.

In her Rule 59 motion, Petitioner's response to the Court's holding is to essentially reassert her general claim that suppression of the letters was unconstitutional because the evidence arguably exculpated her from the death penalty and that Petitioner should not have been made to settle for the testimony of Scott where her letters were in the possession of the prosecution. In support of her claim that the suppression of the materials prejudiced her defense at sentencing, Petitioner cites a number of cases which, she argues, demonstrate that, when one spouse is responsible for the death of the other, proof of infidelity on the part of the deceased spouse has sufficiently mitigated the culpability of the offending spouse such that a sentence of death was not appropriate. The Court finds these cases inapposite. Most of the cited cases deal with killings resulting from sudden and excited passions on the part of the defendant-spouse, usually owing to confrontations with the victim-spouse while engaged in acts of adultery, confrontations with the paramour of the adulterous

3

spouse, or after heated argument with the spouse.[1] The other cited cases are not clearly analogous to this case.[2] It bears noting that, in the cited Thornton case, the Tennessee Supreme Court set aside the defendant's first-degree murder conviction in favor of a voluntary manslaughter conviction because "the necessary elements of malice and premeditation were not demonstrated" by the defendant's actions in shooting his wife's paramour while the couple were engaged in sex. Thornton, 730 S.W.2d at 315. It is uncontested that Petitioner acted with malice and premeditation in procuring her husband's murder. Indeed, none of the cases cited by

---

[1] See State v. Thornton, 730 S.W.2d 309 (Tenn. 1987)(husband who killed wife's paramour provoked by finding wife and paramour engaged in sexual acts at defendant's home); Whitsett v. State, 299 S.W.2d 2, 6 (Tenn. 1957) (defendant happened upon wife's lover by chance and thereafter pursued and shot victim while acting under "intense and adequately provoked passion"); Drye v. State, 184 S.W.2d 10 (Tenn. 1944)(defendant, who searched for and killed wife after she told him in a phone conversation that she would date anyone she pleased, was acting under sufficiently provoked passion triggered by the phone call); State v. Belcher, 2001 WL 1191392 (Tenn. Crim. App. 2001) (defendant learned of affair and shortly thereafter was confronted by spouse and spouse's lover, and argument among the three precipitated the killing of the spouse's lover); and People v. Buggs, 493 N.E.2d 332, 336-337 (Ill. 1986) (defendant's death sentence for murder of wife vacated because it was mitigated by significant provocation where murder occurred in a rage due to argument with spouse which included the revelation that defendant was not the father of the family's children).

[2] The mere fact that there have been spouses who have not received the death penalty for the killings they perpetrated does not advance Petitioner's argument. In one cited case, State v. Reagan, 2004 WL 1114588, pgs. 8-10 (Tenn. Crim. App. 2004), the court upheld defendant's conviction for first-degree premeditated murder and in no way discussed any mitigation of defendant's culpability based on defendant's suspicion that his wife was committing adultery. In another case, State v. McCarver, 2003 WL 22087476, pgs. 17-20 (Tenn. Crim. App. 2003), the prosecution opted not to seek the death penalty against the defendant, for reasons not in the record, and the court again upheld the defendant's conviction for first-degree premeditated murder. Finally, in People v. Carlson, 404 N.E.2d 233, 244-245 (Ill. 1980), the defendant's death sentence for murdering a police officer, purportedly while attempting to commit suicide, was vacated because defendant was acting under extreme emotional disturbance due to the failure of his marriage, and, importantly, the trial court had improperly refused to consider in mitigation the defendant's clean criminal record prior to the murder.

4

Petitioner as examples lending support to her claim that her husband's infidelity should mitigate her punishment are reflective of the protracted deliberation and repeated effort exhibited by the Petitioner in soliciting her husband's murder. The extent of Petitioner's premeditation and her concerted efforts over a period of months to solicit the eventual killer, as well as helping to plan the actual murder, remove her from the class of cases where the death penalty has been held inappropriate due to the killer's visceral emotional reaction to a spouse's infidelity. Petitioner's case is therefore more closely analogized to cases where a spouse has received the death penalty for his or her role in a murder-for-hire scheme resulting in the death of their spouse.[3]

Petitioner asserts that the letters and cards suppressed by the prosecution are sexually explicit and that they would have "sickened" the jury because they "conclusively proved the reason for Gaile Owens' actions." Motion to Alter or Amend Judgment, Owens v. Guida, No. 00-2765, dkt. no. 81 at 4-5. In her habeas petition, Owens notes that the police who discovered the writings described them as "juvenilistic love notes." Though Petitioner would have the Court believe that the notes are so powerfully exculpatory as to punishment that a juror would find the evidence sufficient to mitigate the compelling proof supporting the aggravating factors found by the jury, she only describes the

---

[3] See, e.g., State v. Stephenson, 2005 WL 551938 (Tenn. Crim. App. 2005) and State v. Stephens, 78 S.W.3d 817 (Tenn. 2002) among others.

5

letters to the extent of referring to "pet names" Scott used in composing the cards and notes. It defies reason to suggest that Petitioner would have her husband killed due to his infidelity, and then abandon presenting any evidence of the adultery in mitigation of her punishment, even without the victim's love letters from his mistress. Nonetheless, with the proof presented against Owens at trial, Petitioner has not shown that, had the notes been disclosed to her prior to trial, there was a reasonable probability that her sentence would have been different, or that the suppression of the cards and notes "undermine[d] confidence in the outcome of the trial." U.S. v. Bagley, 473 U.S. 667, 678 (1985); see also Kyles v. Whitley, 514 U.S. 419, 434 (1995). Accordingly, Petitioner has failed to establish that this Court erred in its previous ruling that she suffered no prejudice due to the suppression of the letters, as is required in obtaining relief on a Brady claim. Strickler v. Greene, 527 U.S. 263, 280-82 (1999).

II. **THE COURT ERRED IN FINDING PETITIONER HAD PROCEDURALLY DEFAULTED ON HER CLAIM THAT HER SENTENCE WAS UNCONSTITUTIONAL BECAUSE PETITIONER'S AGREEMENT TO PLEAD TO A LIFE SENTENCE WAS THWARTED BY HER CO-DEFENDANT**

Owens claims that her death sentence was arbitrary, and thus violated the Eighth and Fourteenth Amendments, because she was forced to go to trial due to her co-defendant's rejection of a plea agreement which she desired to accept. Thus, she argues, because her "death sentence is a product of something over which she had no control, it is arbitrary." Response to Respondent's Motion for

6

Summary Judgment, Owens v. Guida, no. 00-2765, dkt. no. 47 at 67. The Court granted Respondent's motion for summary judgment because the Petitioner had procedurally defaulted the claim by not fairly presenting it in state court proceedings. See Owens Order II, dkt. no. 78 at 108-112. In her motion to alter or amend, Petitioner asserts two errors by the Court in its finding of procedural default. First, Petitioner claims that this Court's holding cannot be reconciled with its previous determination regarding the effect of the Sixth Circuit's decision in Cone v. Bell, 359 F.3d 785 (6th Cir. 2004), which held that the Tennessee Supreme Court implicitly considers, in its statutory mandatory review process, any claim that a sentence of death was imposed arbitrarily. Second, Owens maintains that she did fairly present her claim in the state courts because, in arguing on direct appeal that the trial court should have granted a motion to sever her case from her co-defendant's, her appellate brief relied on a state case which cited Brady v. United States, 397 U.S. 742 (1970). The Court will address each of Petitioner's allegations of error in turn.

A.   **THE EFFECT OF CONE ON PETITIONER'S ARBITRARINESS CLAIM**

As noted above, in Cone the Sixth Circuit held that the Tennessee Supreme Court is required to review all death sentences for arbitrary imposition, and, therefore, the state court implicitly reviews claims related to such arbitrary imposition whether or not they are actually presented on appeal. Cone, 359

7

F.3d at 791-794. Though Cone was reversed on appeal, see Bell v. Cone, 125 S.Ct. 847 (2005)(per curiam), the Supreme Court did not address the Sixth Circuit's holding regarding implicit review, instead deciding that the Sixth Circuit was incorrect in finding that the Tennessee Supreme Court failed to apply a constitutional narrowing construction to the aggravating factor which Cone claimed was unconstitutionally vague and therefore led to arbitrary imposition of his death sentence. Id. at 853-54. Given the Supreme Court's decision not to address the Sixth Circuit's implicit review theory, this Court held that the doctrine likely survived the reversal in Cone and remains in effect. See Order Granting in Part Respondent's First Motion for Partial Summary Judgment and Denying Petitioner's Motion for Summary Judgment ("Owens Order I"), dkt. no. 77 at 7. Thus, the question is whether the Tennessee Supreme Court implicitly reviewed Petitioner's claim that her death sentence was arbitrarily imposed because she was denied a conditional plea to a life sentence when her co-defendant opted to proceed with trial rather than accept the plea agreement.

The Sixth Circuit's decision in Cone cannot be construed to reach this contention by Petitioner because, while couched in terms of arbitrariness, the claim has less to do with arbitrary imposition of the death penalty than it does with the state's exercise of well established prosecutorial prerogatives. Petitioner cites no authority for her assertion that the

prosecution's decision to condition her plea on acceptance of the plea by her co-defendant constitutes arbitrary imposition of the death penalty. Rather, she only mentioned Furman v. Georgia, 408 U.S. 238 (1972) and Woodson v. North Carolina, 428 U.S. 280 (1976), for the general proposition that the Constitution requires that "capital sentencing must, as much as humanly possible, eliminate arbitrariness from the imposition of the death penalty." R. 47 at 67. However, the Constitution's prohibition on arbitrary or capricious imposition of the death penalty is directed primarily at the unbridled exercise of discretion by the sentencing authority. In Gregg v. Georgia, 428 U.S. 153 (1976), the Supreme Court explained that Furman was implicated when a specific person has been convicted of a capital offense:

> Furman held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant.

Id. at 199. In Gregg, the Court rejected the claim that a prosecutor's "unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with" violated Furman's prohibition on arbitrary imposition of a death sentence. Id. Gregg specified that "the decision to impose" the death sentence must be guided by standards to avoid arbitrariness; here, the prosecution's decision to offer a plea to Petitioner contingent on her co-defendant's acceptance of the same offer

9

cannot be characterized as a decision to impose the death penalty. That determination was reached unanimously by a jury after due consideration of aggravating and mitigating evidence presented at her sentencing hearing. Because Cone was concerned with the possible abuse of the sentencing authority's power due to the jury's consideration of vague instructions, the Sixth Circuit was careful to recognize this distinction in its discussion of the circumscription of the implicit review doctrine:

> [T]he implicit review doctrine, as we apply it today in this case, does not foreclose the possibility that other death penalty defendants may procedurally default on other constitutional issues not raised on direct appeal. The language of Tennessee's mandatory review statute provides a basis to distinguish between vagueness challenges and other constitutional claims, since it requires the Tennessee Supreme Court to look specifically for sentences "imposed in any arbitrary fashion."

Cone, 359 F.3d at 793. Accordingly, because the prosecution's decision to offer a conditional plea agreement to Petitioner is not a "decision to impose" a death sentence, any perceived constitutional violation inherent in that decision is not saved from procedural default under the limited reach of the implicit review doctrine adopted by the Sixth Circuit in Cone.

**B.   FAIR PRESENTATION OF THE CLAIM IN THE STATE COURTS**

Petitioner asserts that this Court erred in holding that she had not fairly presented to the state courts her constitutional claim regarding her inability to plea. Owens insists that, while on direct appeal, not only did she argue that due process in a

10

capital case required that the trial court sever her case from her co-defendant's so that she could accept a plea agreement, but she also cited Seaton v. State, 472 S.W.2d 905 (Tenn. Cr. App. 1971), a state case which included a citation to Brady v. United States, 397 U.S. 742 (1970). Thus, Petitioner argues, her constitutional claim was fairly presented on appeal such that the state court should have been aware of the federal nature of the claim. In support of this argument, Owens relies on Baldwin v. Reese, 541 U.S. 27 (2004), in which the Supreme Court found that the habeas petitioner had not fairly presented his constitutional claim of ineffective assistance of appellate counsel in state court, in part because the state petition "provid[ed] no citation of any case that might have alerted the court to the alleged federal nature of the claim." Id. at 33. This Court has already held that Petitioner's mere invocation of general concepts like due process does not alone suffice to fairly present an alleged federal claim in the state courts. See Owens Order II at 109-11. Thus, the issue presented in this motion to alter or amend is whether Petitioner's citation, in her brief on direct appeal, of a state case, which included a reference to a federal court opinion, was sufficient to have alerted the state courts to the federal nature of the claim she now seeks to assert in habeas review.

Mere citation to Seaton on direct appeal could not have fairly warned the state court that it was considering a federal

11

constitutional claim based on the prosecution's decision to condition Petitioner's plea agreement on the acceptance of the agreement by her co-defendant. First, the citation to Seaton in Petitioner's appellate brief was not in the context of presenting any legal analysis favoring Petitioner's argument that the severance should have been granted. Indeed, Seaton expressly disfavors granting Petitioner's motion for severance. Rather, the citation was given in recounting the general arguments of the parties at the time the motion was made. See Addendum 7 at 7. Second, despite the citation to Brady v. United States in Seaton, the Tennessee appellate decision deals exclusively with state law regarding a trial judge's considerations in deciding whether to grant a severance motion. Brady v. United States is cited in Seaton only in support of the state court's observation that "plea bargaining is a valuable tool in expediting the administration of criminal justice and should be encouraged by the courts in proper instances." Seaton, 472 S.W.2d at 906. Because the citation to the federal case occurs only in the context of supporting a general policy favored by the courts, and is in no way integral to the analysis or holding of the case, the reference to Brady was clearly in dicta. Given all of the above, such citation of a federal case in Petitioner's appellate brief is far too attenuated to have alerted the state court to any alleged federal nature of the claim it was evaluating.

12

In sum, the claim on appeal was whether the trial court erred in refusing to grant Petitioner's severance motion. The state appellate court could not have known it was considering a federal claim that a death sentence was imposed arbitrarily because of a co-defendant's refusal of a conditional plea agreement. This is made even more apparent because the state case was referenced only in the context of recounting arguments of the parties at the time the severance motion was made, and not as part of the substantive legal argument advanced in the appellate brief. Accordingly, Petitioner's argument that the Court erred in finding this claim procedurally defaulted because she failed to fairly present the claim in the state courts is without merit.

### III. CONCLUSION

For all of the reasons given above, the Court DENIES Petitioner's motion to alter or amend.

IT IS SO ORDERED this 30th day of August, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 85 in case 2:00-CV-02765 was distributed by fax, mail, or direct printing on August 31, 2005 to the parties listed.

---

Alice B. Lustre
ATTORNEY GENERAL OFFICE
425 5th Avenue North
Nashville, TN 37243--049

Robert L. Hutton
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Christopher M. Minton
ASSISTANT FEDERAL PUBLIC DEFENDER
810 Broadway
Ste. 200
Nashville, TN 37243

Honorable J. Breen
US DISTRICT COURT