IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
                                )
GAILE K. OWENS,                 )
                                )
     Petitioner,                )
                                )
v.                              )          No. 2:00-2765-Br
                                )
EARLINE GUIDA, WARDEN,          )
                                )
     Tennessee Prison For Women, )
                                )
     Respondent.                )
                                )
                                )
```

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING CLAIMS ON APPEAL

This matter is before the Court pursuant to Petitioner Gaile Owens' Motion For Certificate Of Appealability ("Motion"). In two separate orders, the Court has granted Respondent Warden summary judgment as to all claims raised in Owens' petition for habeas corpus relief. See Order Granting In Part Respondent's First Motion For Partial Summary Judgment And Denying Petitioner's Motion For Summary Judgment ("Order I"), doc. no. 77 (March 24, 2005) and Order Granting In Part Respondent's First Motion For Partial Summary Judgment ("Order II"), doc. no. 78 (June 23, 2005). The Court subsequently denied Owens' Motion To Alter Or Amend its judgment denying habeas relief. See Order Denying Motion To Alter Or Amend Judgment, doc. no. 85 (Aug. 30, 2005). On November 1, 2005, Petitioner filed the instant motion, and on December 9, 2005, Warden Guida filed her response in opposition. For the reasons set

forth below, the Court grants in part and denies in part Petitioner's Motion For A Certificate Of Appealability.

## I.   LEGAL STANDARDS APPLICABLE TO A MOTION FOR CERTIFICATE OF APPEALABILITY

Twenty-eight U.S.C. § 2253(c) requires the unsuccessful habeas petitioner pursuing an appeal of a district court judgment disposing of the petition to obtain a certificate of appealability ("COA") prior to proceeding on appeal.  Section 2253(c)(2) further instructs that a

> certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

In issuing a COA, the Court is required to specify which issue or issues have satisfied § 2253(c)(2).  See 28 U.S.C. § 2253(c)(3). It has thus been held that, even in a capital case, the "blanket" granting (or denial, for that matter) of a COA as to all issues raised in the habeas petition "undermine[s] the gate keeping function" of § 2253(c).  Porterfield v. Bell, 258 F.3d 484, 487 (6th Cir. 2001).

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the United States Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at

2

893 & n.4).   The   <u>Barefoot</u>   analysis   pertains   to   habeas   claims
dismissed on the merits or procedural grounds.   <u>Slack</u>, 529 U.S. at
484.   Thus, in order to obtain a COA on a habeas claim dismissed on
procedural   grounds,   the   petitioner   is   required   to   show   "that
jurists   of   reason   would   find   it   debatable   whether   the   petition
states   a   valid   claim   of   the   denial   of   a   constitutional   right   and
that jurists of reason would find it debatable whether the district
court   is   correct   in   its   procedural   ruling."   <u>Id.</u>

The Supreme Court has cautioned against undue limitations on
the issuance of a COA:

> [O]ur opinion in <u>Slack</u> held that a COA does not require
> a showing that the appeal will succeed.   Accordingly, a
> court of appeals should not decline the application of a
> COA merely because it believes the applicant will not
> demonstrate   an   entitlement   to   relief.    The   holding   in
> <u>Slack</u>   would   mean   very   little   if   appellate   review   were
> denied because the prisoner did not convince a judge, or,
> for   that   matter,   three   judges,   that   he   or   she   would
> prevail.   It is consistent with § 2253 that a COA will
> issue in some instances where there is no certainty of
> ultimate   relief.    After   all,   when   a   COA   is   sought,   the
> whole premise is that the prisoner "'has already failed
> in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003)(quoting <u>Barefoot</u>,
463 U.S. at 893).   Thus,

> A prisoner seeking a COA must prove "'something more than
> the absence of frivolity'" or the existence of mere "good
> faith" on his or her part . . . .   We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and
> the case has received full consideration, that petitioner
> will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342
(cautioning courts against conflating their analysis of the merits

with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[1]

## II.  THE INSTANT MOTION FOR A CERTIFICATE OF APPEALABILITY

Petitioner initially seeks a broad COA as to all claims raised and ruled upon by the Court in denying her habeas relief. Petitioner then provides supporting argument for her request to certify the following claims:

-Claim 1: In Violation Of The Sixth, Eighth, And Fourteenth Amendments, Ms. Owens's Trial Counsel Rendered Ineffective Assistance At The Sentencing Stage;

-Claim 2: The State Violated The Sixth, Eighth, And Fourteenth Amendments When It Withheld Requested Exculpatory Evidence;

-Claim 15: The Trial Court Violated The Sixth, Eighth, And Fourteenth Amendments When It Refused To Allow Ms. Owens To Present Evidence At The Sentencing Hearing; [and]

-Claims 18 & 19: Instructions On, And The Application Of, The Heinous, Atrocious, Or Cruel Aggravating Circumstance Violated The Sixth, Eighth, And Fourteenth Amendments.

Memorandum In Support of Motion For Certificate Of Appealability ("Pet. COA Memorandum"), doc. no. 92 at 2. Petitioner asserts that her failure to address any arguments toward the propriety of granting a COA on any of the claims not enumerated above does not constitute a waiver of her request for a COA as to all claims. Id.

---

[1]   By the same token, the Supreme Court also emphasized that "[o]ur holding should not  be misconstrued as directing that a COA always must issue."  Miller-El, 537 U.S. at 337.  Instead the  COA  requirement  implements  a  system  of  "differential treatment  for  those appeals  deserving of  attention from  those that plainly do not."  Id.

## III.  ANALYSIS

### A.  The "Blanket" Request for a COA

Owens first requests that the Court grant her a "COA on all issues raised."  Petitioner's COA Memorandum at 2.  Respondent contends that the Court should summarily deny a COA for any claim for which Petitioner does not even attempt to demonstrate that the standards enunciated above are satisfied.  Response In Opposition To Application For Certificate Of Appealability ("Respondent's COA Memorandum"), doc. no. 95 at 1.  Because Petitioner offers separate arguments in support of her request for a COA as to all of habeas claims 1 and 2 as well as claims 15 ¶¶ 131-137, 18 ¶ 162, 19 ¶¶ 166-167, 169, and 21 ¶ 177, the Court will address the request for a COA as to those claims separately.   Hence, the Court's forthcoming discussion of Petitioner's general request for a COA as to all of her habeas claims does not apply to those individual claims enumerated above.

In Order II, the Court dismissed a number of Petitioner's habeas claims on the grounds of procedural default.[2]  As to all of

---

[2]     Claims dismissed wholly on procedural grounds include claim nos. 4, 5, 7, 8, 11, 12, 13, 17, 20, 21, 22, 24, 25, and 26.  Further, some claims were dismissed partly on procedural grounds.  These include the following: nos. 3 (alleging that the State prevented her from having her attorneys present during a state sponsored psychological exam); 6 (regarding Petitioner's Eighth Amendment claim that her jury was tainted by pretrial publicity); 9 (regarding Petitioner's Eighth Amendment claim that she was denied the opportunity to conduct an individualized, sequestered voir dire); 14 (challenging certain guilt stage jury instructions other than the "moral certainty" instruction); 15 (challenging the trial court's refusal to allow Petitioner to present certain mitigating evidence at the sentencing hearing,

the claims dismissed on procedural grounds, recounted <u>supra</u> n.2,
Petitioner has not demonstrated that jurists of reason would find
it debatable whether the Court was correct in its imposition of
procedural default.   <u>Slack</u>, 529 U.S. at 484.   Accordingly, the
Court denies a COA as to those claims.

Applying the standard of review mandated by 28 U.S.C. §
2254(d)(1), the Court also denied a number of Petitioner's claims
on the merits.[3]   As to all of the claims denied on the merits,
recounted <u>supra</u> n.3 and excluding Claims 1, 2, 15 ¶¶ 131-137, 18 ¶
162, 19 ¶¶ 169-171, and 21 ¶ 177, Petitioner has not shown that
reasonable jurists would find the Court's assessment of the merits
of those claims debatable or wrong.        <u>Slack</u>, 529 U.S. at 484.

---

including aspects of the testimonies of Dr. Max West and Ms.
Elizabeth Bratcher which were excluded on hearsay grounds); 18
(challenging the failure to provide certain sentencing stage
instructions); and 23 (challenging the Tennessee Death Penalty
Statute on grounds that it cannot be applied with consistency and
because the State cannot demonstrate that execution is the
least intrusive means of achieving the State's interest).

[3]     Claims denied on their merits include: nos. 3
(challenging the trial court's refusal of Petitioner's request
for funding to hire a mental health expert); 6 (regarding
Petitioner's Sixth and Fourteenth Amendment claim that her jury
was tainted by pretrial publicity); 9 (regarding Petitioner's
Sixth and Fourteenth Amendment claim that she was denied the
opportunity to conduct an individualized, sequestered voir dire);
10 (challenging the striking for cause of certain death-averse
jurors); 14 (challenging the guilt stage "moral certainty"
instruction); 16 (challenging the introduction of morgue
photographs of the victim); 18 (challenging certain sentencing
stage jury instructions); 19 (challenging the constitutionality
of the murder for remuneration aggravating circumstance); and 23
(challenging the Tennessee Death Penalty Statute because it
precludes the jury from knowing the effect of a non-unanimous
verdict).

Accordingly, the Court denies a COA as to those claims.

## B. Individual Requests For A COA

### 1. Claim 1: In Violation Of The Sixth, Eighth, And Fourteenth Amendments, Ms. Owens Trial Counsel Rendered Ineffective Assistance At The Sentencing Stage.

Petitioner seeks a COA on her claim that trial counsel was ineffective during the sentencing stage of her capital murder trial. The Court denied Petitioner's ineffective assistance claim, concluding that the state court's holding that Petitioner suffered no prejudice from counsels' alleged ineffectiveness was not objectively unreasonable pursuant to § 2254(d)(1). See Order II at pgs. 33-54. Because Petitioner alleged three separate failures of counsel as part of her ineffectiveness assistance at sentencing claim, the Court will consider her request for a COA as to each component of Claim 1 separately.

### a. Failure to Investigate Mitigating Evidence

Petitioner alleged that trial counsel was ineffective for failing to conduct an adequate investigation into potential mitigating evidence. The Court denied this portion of Petitioner's ineffectiveness claim, concluding that the State court's determination that Petitioner suffered no prejudice from any purported inadequate investigation was not objectively unreasonable. See Order II at 46. In denying Petitioner's ineffectiveness claim, the state post-conviction court determined, and this Court agreed, that the majority of evidence which Petitioner now contends should have been offered in mitigation

7

lacks credibility.  Owens contends that jurists of reason could find the Court's conclusion debatable because: 1) jurors could have relied upon mitigating evidence lacking traditional indicia of credibility in determining Petitioner's sentence; 2) much of the mitigating evidence now proffered by Petitioner is not contradicted by the State; and 3) some of the more "repulsive" mitigating evidence proffered by Petitioner can be corroborated by independent evidence.

Petitioner first argues that "Jurists Could Find Debate Whether Ms. Owens Was Required To Provide Outside Evidence Verifying Her Statements Of Abuse."  Pet. COA Memorandum at 10, heading IV.B.1.b.  She reasons that, because jurors may rely on "unverified testimony from a complainant when making legal decisions," the State courts', and by extension this Court's, alleged requirement that she verify her mitigating evidence entitles her to a COA.  This Court has imposed no such "verification requirement" on Petitioner.  The Court has only found that the State courts' determination that much of the mitigating evidence now proffered by Petitioner lacks credibility - because it cannot be independently verified and because Petitioner has a propensity for untruthfulness which can be independently verified - is not objectively unreasonable.  Petitioner does not bolster her argument by pointing out that a jury may choose to credit the unverified testimony of a "complainant."  The evidence proffered by Owens, had it been submitted to her jury in "unverified" form, would presumably have come from Petitioner herself.  Her argument

in this regard therefore only highlights precisely what did not occur in this case - Petitioner chose not to testify regarding any of the mitigating evidence now proffered - and thus underscores the State courts' conclusion that the newly proffered mitigating evidence lacks credibility.  Whatever credit her jury might have given her unverified mitigating evidence if given the chance to hear it was waived when Petitioner chose not to cast herself as a "complainant" and offer such testimony to the jury.  Thus, whether and to what extent the jury would have given weight to Petitioner's testimony is irrelevant to whether counsel was ineffective.  No jurist of reason would conclude that Petitioner's counsel was ineffective for failing to investigate mitigating evidence merely because a jury could have credited the unverified testimony of Petitioner had she chosen to testify.

Owens further contends that, even if she were bound by some "verification requirement," reasonable jurists could debate whether the State court acted reasonably in concluding that all of the mitigating evidence Petitioner proffers in her ineffectiveness claim lacks credibility.  Petitioner reasons that neither the State nor this Court cast doubt on the "less repulsive" mitigating evidence for which counsels' failure to investigate allegedly rises to ineffective assistance.  Petitioner therefore concludes that jurists of reason could debate the reasonableness of the State courts' finding that the proffered evidence lacks credibility.  Furthermore, Petitioner argues that even the "more repulsive" mitigating evidence which counsel should have investigated can be

corroborated by independent evidence.  Thus, she contends that the State courts' treatment of the sum of her proffered mitigating evidence is subject to debate among reasonable jurists.

The State courts concede that independent evidence, namely the testimony of Petitioner's sister, establishes that Petitioner's father was abusive.  See Owens v. State, 13 S.W.3d 742, 754 (Tenn. Crim. App. 1999).  However, the State courts make clear that the testimony of Petitioner's family members refutes the majority of Petitioner's discrete allegations of lifelong physical and sexual abuse while confirming that Petitioner has a lengthy history of lying.  Id. at 755.  Thus, the State courts have cast doubt on any item of mitigating evidence which depends only on Petitioner for verification.  The State courts have not, however, engaged in the exercise of distinguishing the mitigating evidence on more or less repulsive grounds, as Petitioner does in seeking a COA.

Owens has demonstrated that, minimally, counsel did not bill any significant amount of time in preparing to present mitigating evidence.  Further, at least some mitigating evidence was available and could have been independently verified by the testimony of Petitioner's sister, if not others, had counsel more thoroughly developed a strategy for mitigation.  While this Court does not believe that the State courts were objectively unreasonable in concluding that counsel's failure to investigate and discover the mitigating evidence Petitioner now proffers did not prejudice Petitioner, this Court's beliefs are not at issue in the instant motion.  Rather, the Court must inquire whether a simple reasonable

10

jurist might conclude that the failure to investigate mitigating evidence on Petitioner's behalf could have prejudiced her defense at sentencing.  A reasonable jurist, confronted with the mitigating evidence proffered by Petitioner, some of which is arguably corroborated by independent sources, might debate whether counsel's failure to comprehensively investigate potential mitigation evidence prejudiced Petitioner at sentencing.  Therefore, the Court issues a COA on whether Petitioner's counsel was ineffective for failing to properly investigate mitigating evidence prior to and during Petitioner's sentencing hearing.

### b. Failure to Obtain Expert Services

Petitioner argues that reasonable jurists could debate the propriety of this Court's judgment that the State courts were not objectively unreasonable in concluding that Petitioner's counsel was not ineffective for failing to obtain expert psychiatric assistance in preparing Petitioner's case for mitigation.  The Court's holding was premised on two components: 1) because federal law does not require the provision of expert services merely in order to offer mitigating evidence related to culpability, counsel was not constitutionally ineffective for failing to obtain services that the Constitution does not require; and 2) the State courts' conclusion that Petitioner has not satisfied the separate state law requirement of showing a "substantial need" in order to obtain expert services pursuant to state statute was not objectively unreasonable.  Order II at 52.

Owens contends that reasonable jurists could debate the

11

Court's holding because, while the Eighth and Fourteenth Amendments may not require the provision of expert services as sought by Petitioner, her claim is only concerned with what the Sixth Amendment requires of her counsel. Petitioner avers that, because counsel failed to satisfy the procedural requirements of requesting expert services pursuant to state statute, she was unable to obtain valuable expert psychiatric services in order to offer mitigating evidence related to her culpability for the murder of her husband. Thus, she concludes, counsel was constitutionally ineffective for failing to properly pursue potentially available state services.

The post-conviction court determined that Petitioner failed to satisfy Tennessee's "substantial need" requirement in requesting expert services. Owens, 13 S.W.3d at 756 (quoting State v. Evans, 838 S.W.2d 185, 192 (Tenn. 1992)). Because Petitioner could demonstrate no substantial need for expert services, the Court of Criminal Appeals concluded that she suffered no prejudice from counsel's alleged failure to comply with the procedural requirements in requesting such services. Id. Rather than demonstrating why reasonable jurists might debate whether the State courts' conclusion regarding prejudice is objectively unreasonable, Petitioner merely asserts that she is entitled to a COA because the Court's Eighth and Fourteenth Amendments analysis is inapposite to her Sixth Amendment claim. However, as discussed above, the State courts have determined that counsel was not ineffective in failing to obtain expert services, and that decision is neither contrary to nor an unreasonable application of federal law. The Constitution

does not require counsel to effectively pursue services granted only at the discretion of the state court pursuant to state law. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). Owens has not demonstrated that a reasonable jurist would debate whether the State court's decision that she was not prejudiced by counsel's failure to obtain expert services was contrary to or an unreasonable application of federal law. Accordingly, the Court declines to issue a COA as to this aspect of Petitioner's ineffective assistance claim.

### c. Failure to Overcome the State's Hearsay Objections at the Sentencing Hearing

Petitioner has alleged that counsel was ineffective for twice failing to overcome the State's hearsay objections to witness testimony she attempted to proffer at her sentencing hearing. Counsel apparently failed to rebut the State's hearsay objections by arguing that Tenn. Code Ann. § 39-2-203(c) allowed for the admission of hearsay evidence at a capital sentencing proceeding. As a result, Petitioner contends, she was denied the opportunity to present substantial mitigating evidence to the jury. The post-conviction court ruled, and the Court of Criminal Appeals affirmed, that the failure to elicit the testimony, as it pertains to Dr. Max West, a psychiatrist who met with Owens many years before the murder of her husband, did not prejudice her because Dr. West would have revealed "damaging admissions" of Petitioner regarding the state of her marriage and her problems with truthfulness. Owens, 13 S.W.3d at 756. This Court held that, while the State courts

13

were perhaps unreasonable in concluding that the failure to overcome the hearsay objection did not prejudice Petitioner, such a conclusion is not objectively unreasonable.  Order II at 54.

Apart from misquoting the Court's holding,[4] the inmate contends that this Court's deference to the State courts' conclusion that the failure to procure the testimony of Dr. West was not prejudicial is misplaced as that determination was based on the post-conviction court's speculation that Dr. West's testimony would have harmed Petitioner and is therefore merely an opinion of the post-conviction court, and not a "factual determination" as suggested by the Court.

Petitioner has demonstrated that a patent failure of her trial counsel precluded her from offering the testimony of Dr. West at her sentencing hearing.  This Court has determined that the State courts' decision on Petitioner's ineffectiveness claim related to this failure of counsel is, while perhaps unreasonable, not

---

[4]    Petitioner's apparent misquoting of the Court's Order II appears to be innocuous and is noted here only as a matter of course because she attaches legal significance to, indeed she emphasizes, a phrase which the Court did not employ.  In her Motion, Petitioner purports to quote from the Court's Order while refuting that the State courts made a "*factual finding* that Dr. West 's [sic] testimony would not have furthered Owens's case." Pet. COA Memorandum at 16 (emphasis supplied by Petitioner).  However, this Court characterized the State courts' conclusion in this regard as a "factual determination."  Order II at 53.  The Court's use of the phrase "factual determination" is consistent with the Sixth Circuit case law the Court cited in addressing Petitioner's claim.  Despite the misquotation, the Court will consider Petitioner's argument because it appears that "factual findings" as discussed by Petitioner in her citations to relevant cases and "factual determinations" as discussed by the Court are synonymous as legal phrases.

14

objectively unreasonable.  The mere fact that the State courts'
decision can be both unreasonable but perhaps not objectively
unreasonable suggests that reasonable jurists can debate whether
that failure actually prejudiced her defense at her sentencing
hearing.  Accordingly, Petitioner is entitled to a COA as to this
aspect of her ineffectiveness claim.

### 2. Claim 2:  The State Violated The Sixth, Eighth, And Fourteenth Amendments When It Withheld Requested Exculpatory Evidence.

Owens has alleged that the State violated her due process
rights in failing to disclose cards and notes in its possession
which belonged to the victim and were apparently written by his
mistress.  Petitioner asserts that, had the cards and notes been
disclosed, she would have had documentary evidence substantiating
her husband's infidelity available for presentation as mitigating
evidence during her sentencing hearing.  Contrary to the assertion
of Petitioner, <u>see</u> Pet. COA Memorandum at 18, this Court has not
concluded that the cards and notes are exculpatory for purposes of
<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Rather, the Court concluded
that "it is unnecessary to determine whether the love letters . .
. were exculpatory because Petitioner has failed to establish the
third element of a <u>Brady</u> claim, i.e., prejudice resulting from the
suppression of the evidence."  Order II at 57.  The Court held that
Petitioner had failed to establish prejudice because she knew of
her husband's affair before her trial, indeed before she had him
murdered, and she chose not to present any evidence of the affair,
including, for example, the testimony of the mistress, Gala Scott,

or herself, during her sentencing hearing.  The Court, therefore, determined that Petitioner had failed to demonstrate a reasonable probability that her conviction or sentence would have been different had the cards and notes been disclosed.  Accordingly, the Court concluded that the State courts' determination that Petitioner's Brady claim lacked merit was not contrary to or an unreasonable application of clearly established federal law.

Owens first contends that the Court's reasoning is inappropriate, as the Court's theory that Petitioner could have called Scott to testify in order to present evidence of the affair was not relied upon by the State courts.  Moreover, Petitioner asserts that jurists of reason could debate whether the ability to call Scott, whom Petitioner asserts would likely have been hostile, "places Ms. Owens in the same position as having possession of the documentary truth."  Pet. COA Memorandum at 19.

The State's Brady obligations do not require the State to disclose information to a defendant "who is aware of essential facts that would allow him to take advantage of the exculpatory evidence at issue." Coleman v. Mitchell, 268 F.3d 417, 438 (6th Cir. 2001); see also U.S. v. Rivera Rangel, 396 F.3d 476, 482 (1st Cir. 2005)(speculating that no Brady violation exists where the prosecution fails to disclose a notebook whose contents, even if exculpatory, contain information "cumulative of that which [the defendant] already possessed.").  Therefore, a defendant is not prejudiced by the failure to disclose information which is already known to the defendant.  The State courts relied, in-part, on this

16

principle in denying Petitioner's <u>Brady</u> claim.  <u>See</u> <u>Owens</u>, 13 S.W.3d at 758.  Thus, the issue of prejudice was properly before the Court, and the Court's discussion of Petitioner's failure to demonstrate prejudice because she was already aware of the affair, irrespective of any cards or notes known to the prosecution, did not impermissibly exceed the Court's statutorily mandated parameters of review.

The exculpatory evidence at issue here, assuming, *arguendo*, that any such evidence is exculpatory, is information concerning the victim's affair which presumably can be gleaned from the cards and notes belonging to the victim and which, for the most part, would be cumulative of the knowledge Petitioner already had based on personal experience and observation.[5]  Accordingly, the State court's conclusion that the failure to disclose the cards and notes did not amount to a <u>Brady</u> violation is not contrary to or an unreasonable application of clearly established federal law. Moreover, it is clear from the transcript of Petitioner's post-conviction hearing that trial counsel, despite his knowledge of the affair, was apprehensive of broaching the subject at trial because he feared that demonizing the victim before the jury might harden the jury's feelings toward Petitioner at sentencing.  <u>See</u> Addendum

---

[5]     While Petitioner may not have known that the victim and his mistress  "celebrated their acts  of cunnilingus and fellatio by giving each other pet names," Pet. COA Memorandum at 19, such information would be of questionable relevance  to  Petitioner's case in mitigation because  aspects of  her husband's  affair that she did not know about cannot be said to have  affected her state of  mind and  are  therefore  not  probative  of  her  contention that her husband's affair drove her to precipitate his murder.

13 vol. I at 92-93.  Given all of the above, the Court's conclusion that, had the cards and notes been produced, it is unlikely that Petitioner's conviction or sentence would have been different is amply justified.

That being said, the Court's inquiry in the instant motion is whether a reasonable jurist might debate whether Petitioner's <u>Brady</u> claim should be resolved differently.  <u>Slack</u>, 529 U.S. at 484.  A reasonable jurist may be troubled, indeed this Court is concerned, by the fact that Petitioner specifically requested any material evidencing her husband's affair, asserting that such information could be relevant to guilt or punishment, and was yet denied access to such evidence in the possession of the State.  A reasonable jurist might also conclude that the ability to verify Petitioner's knowledge of her husband's affair with independent documentary evidence would have emboldened counsel to overcome his stated reticence and bring evidence of the victim's affair before the jury in hopes of mitigating Petitioner's sentence because counsel would not have been forced to rely on a potentially hostile witness, the mistress, or Petitioner herself, whom has been characterized as a "pathological liar."  Thus, Petitioner has demonstrated that this issue is "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893)). Accordingly, Petitioner is entitled to a COA as to Claim 2.

> **3. Claim 15: The Trial Court Violated The Sixth, Eighth, And Fourteenth Amendments When It Refused To Allow Ms. Owens To Present Evidence At The Sentencing Hearing.**

Petitioner seeks a COA on the portion of Claim 15, ¶¶ 131-137, related to the trial court's refusal to allow her to present evidence at her sentencing hearing concerning her willingness to accept the State's conditional plea agreement. The Court denied this claim on the merits, concluding that the Tennessee Supreme Court's rejection of Petitioner's argument, see State v. Porterfield, 746 S.W.2d 441, 449 (Tenn. 1988), was not contrary to or an unreasonable application of clearly established federal law. Order II at 85. The State court based its rejection of Petitioner's claim on its determination that evidence related to Petitioner's desire to plead guilty was not relevant to "any mitigating factor raised by the defendant," and was therefore properly excluded pursuant to Lockett v. Ohio, 438 U.S. 586 (1978). Porterfield, 746 S.W.2d at 449.

Petitioner contends that she is entitled to a COA because jurists have recognized that "acceptance of responsibility as evidenced by accepting a guilty plea offer constitutes mitigating evidence appropriate for a sentencing hearing." Pet. COA Memorandum at 20. None of the cases cited by Petitioner, however, support her proposition that the trial court was required to allow her to present evidence of her willingness to accept a conditional plea offer before her sentencing jury. This Court's review of applicable case law reveals that other courts have ruled that, in seeking to mitigate his punishment, a defendant is not entitled to present evidence of his thwarted desire to accept a plea during sentencing, see, e.g., Ross v. State, 717 P.2d 117, 122 (Okla.

19

Crim. App. 1986), that he wished to plead guilty in the absence of an offer, see State v. Timmendequas, 737 A.2d 55, 115 (N.J. 1999), or that the State previously offered a plea agreement. See Wisehart v. State, 693 N.E.2d 23, 64-65 (Ind. 1998); State v. Webb, 638 N.E.2d 1023, 1033-34 (Ohio 1994); Wiggins v. State, 597 A.2d 1359, 1369-70 (Md. 1991); State v. Wright, 756 S.W.2d 669, 675 (Tenn. 1988); and Davis v. State, 554 So.2d 1094, 1110 (Ala. Crim. App. 1984). Though only the Ross case is factually analogous to this case in terms of the proponent's desire to introduce evidence of a plea offer he wished to accept, the same policy underlies all of the cases. Courts are uniformly concerned that allowing defendants to introduce evidence of unsuccessful plea negotiations and/or offers during sentencing proceedings will undermine the valuable role of plea bargaining by discouraging prosecutors from exploring plea negotiations because they do not wish for prior offers of leniency to come before a jury considering whether to impose a more severe punishment.

Obviously, a defendant's acceptance of responsibility is related to the character of the Defendant and is an appropriate consideration during mitigation. However, to the extent that Petitioner wished to express remorse or contrition in hopes of mitigating her sentence, she could have expressed those sentiments by appealing to the jury directly. That she chose not to so testify undercuts her present assertion that she desired to garner favor with her jury by accepting responsibility for her actions but was thwarted from doing so by the trial court. The Court has found

20

no authority, and Petitioner cites to no such authority, that would require a court to allow evidence of unsuccessful plea negotiations before a sentencing jury for the purpose of showing the defendant's acceptance of responsibility.   Accordingly, Petitioner has not demonstrated that jurists of reason could debate the propriety of the Court's holding denying this claim.   Petitioner is not entitled to a COA on Claim 15 ¶¶ 131-137.

### 4. Claims 18 & 19:   Petitioner's Challenge To The Application of The Heinous, Atrocious, Or Cruel Aggravating Circumstance.

In her habeas petition, Owens challenged various aspects of the Heinous, Atrocious, Or Cruel ("HAC") aggravating circumstance relied upon by her jury in sentencing death.   Petitioner asserted that the HAC aggravator could not be vicariously applied to Petitioner, <u>see</u> Petition at 38, Claim 18 ¶ 162, and that the HAC aggravator was unconstitutionally vague and therefore did not perform its required narrowing function.   <u>Id.</u> at 39, Claim 19 ¶ 169, and 41, Claim 21 ¶ 177.   The Court denied each of Petitioner's contentions on the merits.   <u>See</u> Order I at 18.   She now seeks a COA as to these claims, arguing that reasonable jurists can debate whether her HAC claims should have been resolved differently.

First, Petitioner contends that, while the U.S. Supreme Court's recent decision in <u>Bell v. Cone</u>, 543 U.S. 447 (2005)(per curiam) "admittedly tarnishes" her claim regarding the constitutionality of the HAC aggravator, the decision does not diminish her contention that, even if the Tennessee Supreme Court did apply a constitutional narrowing construction on appeal, that

21

court was still required to re-weigh the narrowed aggravator with the other aggravating and mitigating circumstances in order to render a properly individualized sentence. Pet. COA Memorandum at 21. There can be no doubt but that the Supreme Court's decision in Bell v. Cone does more than "tarnish" Petitioner's HAC claim. Bell v. Cone has effectively foreclosed relief on claims of this sort. The Sixth Circuit Court of Appeals recognized this in Payne v. Bell, 418 F.3d 644, 653 (6th Cir. 2005), when it affirmed the denial of habeas relief on yet another Tennessee inmate's challenge to the HAC aggravator relied upon at his trial. The Sixth Circuit held that the Supreme Court's decision in Bell v. Cone makes clear that the Tennessee Supreme Court cures any constitutional infirmity in the HAC aggravator by application of a valid narrowing construction on appeal. Id. at 655. The U.S. Supreme Court has therefore succinctly established that the Tennessee Supreme Court's mandatory review includes application of a valid narrowing construction of the HAC aggravator which ensures that death sentences are not inflicted in an arbitrary or capricious manner. Cone, 543 U.S. at 459-60. No reasonable jurist, considering the recent decisions of the Supreme Court and the Sixth Circuit Court of Appeals, would debate whether the Tennessee Supreme Court is required to further engage in some sort of re-weighing to achieve a constitutionally valid sentence. Petitioner is not entitled to a COA as to Claim 19 ¶¶ 166-167, 169, and Claim 21 ¶ 177.

Owens also contends that jurists of reason might debate whether the HAC aggravator may be vicariously applied to her

because, purportedly, she did not intend that the victim suffer and had no input on the manner in which her co-defendant carried out the murder.  As the Court discussed previously, see Order I at 15-17, the Supreme Court has established that death eligibility may be determined based on principles of accessorial liability.  See Tison v. Arizona, 481 U.S. 137 (1987).  Petitioner contends that, because some jurists have refused to apply the HAC aggravator vicariously, she is entitled to a COA on the issue.  Pet. COA Memorandum at 22 (citing Omelus v. State, 584 So.2d 563, 566-67 (Fla. 1991) and State v. Isa, 850 S.W.2d 876, 902-03 (Mo. 1993)).

The cases noted by Petitioner are devoid of any relevant and cogent constitutional analysis.  In Omelus, the Florida Supreme Court merely concluded, without analysis of either the federal or state constitutions, that the defendant could not be subject to vicarious application of Florida's analogous HAC aggravator. Omelus, 584 So.2d at 566.  In Isa, the Missouri Supreme Court opined that "it is never permissible to sentence a person to death for acts of another," and therefore found error in jury instructions which it considered "nonsensical" and which allowed the jury to consider the conduct of one defendant in assessing the sentence of another defendant.  Isa, 850 S.W.2d at 902-03.  The Missouri court predicated its conclusion on an expansive construction of the Constitution's command that "an individualized decision is essential in capital cases."  Id. (quoting Lockett v. Ohio, 438 U.S. 586, 605 (1978)).  Simply put, the Isa court's analysis of this discrete issue lacks authority or coherence.

23

While the Constitution certainly requires individualized sentencing, Isa's reliance on Lockett is perplexing given that Lockett, in relevant part, was concerned with whether and to what extent the capital sentencing authority can be precluded from considering evidence in mitigation of punishment. See Lockett, 438 U.S. at 604-05. Moreover, the Missouri Supreme Court does not even mention Tison, though it is clearly the most relevant U.S. Supreme Court authority bearing on the issue of vicarious liability in capital cases.   Other courts confronted with the issue have recognized this and have therefore relied upon Tison in applying aggravating circumstances vicariously. See, e.g., State v. Peeler, 857 A.2d 808, 87-78 (Conn. 2004), cert. denied, 126 S.Ct. 94 (2005)(concluding that Tison allows for accessorial liability to establish aggravating circumstances and inventorying, at n.88, other cases reaching the same conclusion)   .   Thus, jurists of reason, confining themselves to principled analysis of relevant case law, would not debate whether Petitioner's claim challenging the vicarious application of the HAC aggravating circumstance should be resolved differently.   Petitioner is not entitled to a COA as to Claim 18 ¶ 162.

**IV.   CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part Petitioner's Motion For A Certificate Of Appealability.   The Court issues a COA on Claim 1 ¶¶ 33-39,[6] 43-45,

---

[6]   The COA issued by the Court does not extend to allegations which the Court has found procedurally defaulted.

and Claim 2 ¶¶ 56-66.


        IT IS SO ORDERED this 31st day of May, 2006.


                                s/ J. DANIEL BREEN
                                UNITED STATES DISTRICT JUDGE

---

Thus, allegations found in Claim 1  ¶¶ 37(a)(i)-(a)(viii) and  38 (a)-(e) are not certified on appeal.  <u>See</u> Order II at 36.